## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **JERAMIAH CHAMBERLAIN,** | ) | |
| | ) | |
| Petitioner, | ) | Case No. 7:18CV00461 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **HAROLD W. CLARKE,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Respondent. | ) | |

*Jeramiah Chamberlain, Pro Se Petitioner;[1] Elizabeth Kiernan Fitzgerald, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Respondent.*

The petitioner, Jeramiah Chamberlain, a Virginia prisoner, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He attacks his 2013 state convictions on the ground that he received ineffective assistance of counsel, in violation of his Sixth Amendment rights. The respondent seeks dismissal of the petition on the ground that it was untimely. The respondent also contends that the claims have been procedurally defaulted and are otherwise without merit.

For the reasons set forth in this Opinion, I find that equitable tolling saves his petition, and that the petitioner has shown cause and prejudice overcoming

---

[1] The petition was filed pro se, but retained counsel later appeared for the petitioner and filed a brief and supplemental brief. Counsel thereafter moved to withdraw based upon irreconcilable differences with his client. The court permitted the withdrawal. (Order, Dec. 28, 2020, ECF No. 51.)

the procedural default.  On the merits, and after review of the voluminous record, I find that one of his claims of ineffective assistance, namely the failure to object to a crucial but defective jury instruction as to the elements of attempted capital murder, supports the issuance of the writ and I will vacate his conviction on that charge, subject to the Commonwealth's opportunity, if it desires, to retry the petitioner.

## I.

Chamberlain was convicted by a jury on August 20, 2012, in the Circuit Court of Montgomery County, Virginia, of attempting to commit capital murder (Case No. CRl1000934), using a firearm in attempting to commit capital murder (Case No. CR11000935), and maliciously discharging a firearm inside an occupied building (Case No. CR11000936).   In a separate bench trial, Chamberlain was convicted of possessing  a firearm by a convicted felon (Case No. CRl1000937).  He was sentenced to 25 years for attempted capital murder, three consecutive years for use of a firearm in the attempted capital offense, and five years on each of the remaining two charges to run concurrently with each other but consecutively to the other two sentences, resulting in a total active

sentence of 33 years. (Br. Supp. Mot. Dismiss Ex. 2, Va. Cir. Ct. Sent'g Order, ECF No. 19-2.)[2]

The facts surrounding Chamberlain's crimes were described in the opinion of the Court of Appeals of Virginia as follow:

> [O]n May 8, 2011, police arrived at the home of appellant's mother, after receiving information that appellant was at the home, to arrest him on an outstanding warrant. Appellant's mother answered the door, and while two officers were talking with her, a third officer stationed at the rear of the home observed appellant stick his head out of a second-story window. Based on the officer's identification of appellant, two officers then made entry into the home and proceeded to the second floor.
>
> As both officers ascended the stairs, appellant came out of a room on the second floor with a "gun pointed at [the first officer's] head," and said, "get the fuck out, get the fuck out." Trial Tr. at 105, 113. Appellant "made no attempt to drop the weapon" once he was ordered to do so. Id. at 113. The first officer to reach the top of the stairs took cover in a bedroom on the second floor. Appellant then "fixed the firearm" on the second officer coming up the steps. Id. at 87.  The second officer put his hands up and backed away from appellant.  The first officer then emerged from the bedroom with his firearm drawn, telling appellant to "drop the weapon."  Id. at 88. Appellant then "moved towards" the first officer, id. at 105, and both the appellant and the officer discharged their firearms.  The officer again took cover in the bedroom and "felt a burning sensation down both [his] arms," id., which a forensic scientist testified was "stippling," or residue burns, resulting from being in close proximity to the muzzle of appellant's firearm, id. at 224. The officer stepped out of the bedroom again, and

---

[2]  The respondent attached many of the state court records to his brief (ECF No. 19) and citations here are to those exhibits where possible.  The paper trial record received by this court from the Circuit Court of Montgomery County is divided into four parts, one for each charge, but the separate parts contain many of the same documents.  The most complete part is for Case No. CR11000934, and certain citations to that part are designated "Trial R." using the typed page number at the bottom of each page.  References to the trial transcript will be designed as "Trial Tr." using the transcript page number.

when the officer saw appellant raise his gun in preparation of firing another shot, he fired a second shot at appellant, hitting him in the arm. Appellant's gun had one used cartridge, and a bullet matching appellant's gun was recovered from the wall behind the spot where the officer had been standing.

(Br. Supp. Mot. Dismiss Ex. 5, Va. Ct. App. Order 2, ECF No. 19-5.)

On July 26, 2011, Chamberlain was indicted for attempted capital murder of a police officer and related offenses alleged to have occurred on May 8, 2011. The court appointed an attorney to represent Chamberlain and the matter was set for trial. Because the first attorney left private practice, a new attorney was thereafter appointed.

Chamberlain filed a motion to be allowed to represent himself at trial with the appointed attorney to remain on the case as standby counsel. (Trial R. 60–61.) The trial judge ultimately granted the motion on April 15, 2012.

The case proceeded to a jury trial on May 8, 2012. After deliberating for some time, the jurors reached an impasse and were given an *Allen* charge by the court. Further deliberations were not fruitful, and the court declared a mistrial. The matter was reset for trial on August 20, 2012. Chamberlain again represented himself at the outset of the second trial, but after the prosecution rested and Chamberlain called his first two witnesses, he asked the court to reinstate Mr. Clemens to full duty, which request was allowed. This time the jury convicted Chamberlain of attempted capital murder, use

of a firearm in the commission of attempted capital murder, and malicious discharge of a firearm in an occupied building.  In a separate bench trial, while the jury was deliberating, the trial court convicted Chamberlain of possession of a firearm by a convicted felon and then ordered a presentence report for all convictions, scheduling sentencing for November 19, 2012. Following the verdict, the jury heard evidence regarding sentencing and returned sentences of 25 years on attempted capital murder, three years on use of a firearm in commission of attempted capital murder, and five years for malicious discharge of a firearm in an occupied building.

On November 19, 2012, new retained counsel entered an appearance on behalf of Chamberlain, and sentencing was postponed until February 12, 2013.  On May 13, 2013, defense counsel filed a motion to set aside the verdict on the attempted capital murder and use of a firearm in attempted capital murder convictions, alleging that Chamberlain's right to a fair trial had been violated by the court's failure to instruct the jury that the mens rea for attempted capital murder is "willful, deliberate, and premeditated."  (*Id.* at 506–25.)  Following a hearing on June 4, 2013, the trial court denied the motion to set aside the verdict and  imposed the sentence.

Counsel timely filed an appeal with the Court of Appeals of Virginia, which denied the appeal by order dated October 29, 2014. (Va. Ct. App. Order,

ECF No. 19-5.)  Chamberlain's petition for appeal to the Supreme Court of Virginia was denied June 3, 2015. (Br. Supp. Mot. Dismiss Ex. 8, Va. Sup. Ct. Order, ECF No. 19-8.)  On  July 13, 2015, Chamberlain signed a new retainer agreement with his retained counsel to file his appeal to the United States Supreme Court and to file any subsequent state and federal habeas corpus petitions thereafter, under which he might obtain relief, and Chamberlain's mother paid the $15,000 retainer required by the agreement.  (Pet. Ex. 1, Fee Agreement Letter 9–10, ECF No. 1-1.)  The Supreme Court denied his certiorari petition on October 13, 2015.  *Chamberlain v. Virginia,* 136 S. Ct. 345 (2015).

Chamberlain did not become aware of the Court's denial of his petition until March or April of 2016, but he assumed his attorney was working on the habeas petition.   He knew that he had a one-year statute of limitations to file his state habeas petition from the disposition of his direct appeal, which he understood to be October 13, 2015, the date the Supreme Court denied his petition for certiorari, so he became nervous when he had not heard from counsel by August 2016, two months before he thought the habeas was due.  (Am. Pet., 20–21, ECF No. 11.)  He then prepared and filed his own petition, placing the same in the prison mail on September 12, 2016, a full month before he thought the petition was due, and he sent a letter discharging his counsel.  Correspondence from counsel dated October 25, 2016, attached to Chamberlain's original

petition, confirmed that counsel had not filed a state habeas petition, but noted that the attorneys had "worked voluminous hours on the habeas petition and were preparing the filing of such Petition" until they received Chamberlain's letter of September 12, along with the copy of the petition he had filed for himself.  (Pet. Ex. 1, ECF No. 1.)  Counsel also stated that "we are happy you were able to use a lot of the information and work we had done for you." (*Id.*)

The Montgomery County Circuit Court denied Chamberlain's state habeas petition as untimely, because Virginia Code Ann. § 8.0l-654(A)(2) allows petitions to be filed "within two years from the date of final judgment in the trial court" or "within one  year from ...  final disposition of the direct appeal *in state court*," whichever is later  (emphasis added).[3]  (Br. Supp. Mot. Dismiss Ex. 16, Va. Cir. Ct. Final Order, ECF No. 19-16.)  Two years from the trial court's final order  of June 6, 2013, was June 6, 2015; one year from final disposition of his  direct  appeal in the  Supreme Court of Virginia was  June 3, 2016.  The September 2016 filing was over three months past the later date.  The Supreme Court of Virginia denied Chamberlain's appeal on October 26, 2017, "finding no reversible error in the judgment."  (*Id.* at Ex. 20, Va. Sup. Ct. Op., ECF No. 19-20.)

---

[3] The state court ruled in the alternative that Chamberlain's claims for ineffective assistance of counsel had no merit. (Va. Cir. Ct. Final Order 4–5, ECF No. 19-16.) Evaluating each claim  individually, the trial court found neither deficient performance nor prejudice on any claim. (*Id.* at 5-21.)

Chamberlain certified that he had initially placed his 2254 petition to this court in the prison mail on August 8, 2018, but it was returned to him on August 30, 2018, by the post office. He enclosed a return-to-sender envelope that had been addressed to the court with a postmark of August 9, 2018. He again placed the petition in the prison mail on September 6, 2018, which was received and filed by the court on September 17, 2018. His petition raises the following nine claims of ineffective assistance of counsel:

(1)     Trial counsel failed to request a jury instruction that attempted capital murder requires proof that defendant's actions were willful, deliberate, and premeditated;

(2)     Trial counsel failed to object to a jury instruction allowing jurors to infer that he intended the natural and probable consequences of his acts;

(3)     Trial counsel failed to request a mistrial or curative instruction when the prosecutor misstated the evidence;

(4)     Trial counsel improperly withdrew a proposed jury instruction that would have allowed jurors to convict Chamberlain of a lesser-included offense;

(5)     The cumulative errors of trial counsel resulted in a trial so unfair as to violate Chamberlain's constitutional right to due process;

(6)     Appellate counsel failed to raise issues (2) through (5) above and failed to argue issue (1) above as a due process violation;

(7)     Trial counsel violated Chamberlain's speedy trial rights by requesting a continuance, against his explicit instructions, without consulting or advising him;

(8)     Appellate counsel failed to raise the speedy trial violation on appeal; and

(9)    Counsel failed to file a timely habeas petition in state court on his behalf.

The respondent has filed a Motion to Dismiss (ECF No. 17), and the issues have been fully briefed.

## II.

## A.

As amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), the federal habeas statute requires state prisoners to meet several procedural hurdles before a federal court may grant relief. First, the petitioner must timely file his claim. 28 U.S.C. § 2244(d). Next, he must exhaust his state court remedies before filing in federal court. 28 U.S.C. § 2254(b)(1)(A).

As applicable to this case, 28 U.S.C. § 2244(d) states:

(1)    A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation shall run from the latest of --

    (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

. . . .

(2)   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Chamberlain's state judgment became final on October 13, 2015, the date on which the Supreme Court denied his petition for certiorari. The one-year statute of limitations began running at that time. 28 U.S.C. § 2244(d)(1)(A). Absent tolling, the last date for filing his habeas petition in this court was October 13, 2016.

The statute provides for tolling of the limitation period while a properly filed application for state post-conviction relief is pending. Specifically, "[t]he time during which" the application is pending "shall not be counted toward" the limitation period. 28 U.S.C. § 2244(d)(2). Unlike § 2244(d)(1)(A), § 2244(d)(2) does not delay when the statute starts running. Rather, the statute starts running when the state judgment becomes final, but the clock is stopped when a *properly filed* state post-conviction application is pending. When the state action is no longer pending, the clock resumes at the point where it was when it stopped; the statute does not begin anew. *McHoney v. South Carolina,* 518 F. Supp. 2d 700, 703–04 (D.S.C. 2007).

The state court accepted September 12, 2016, as the filing date for Chamberlain's state habeas petition. (Va. Cir. Ct. Final Order 2, ECF No. 19-16.) If that state petition were properly filed, then that filing temporarily stopped the one-year federal statute of limitations after 334 days had passed. The state matter was

pending until October 26, 2017, when the Supreme Court of Virginia denied his state habeas appeal.  If the filing tolled the federal statute of limitations, then the Supreme Court of Virginia's habeas denial restarted the clock. From that point, only 31 days remained in which to file his federal habeas petition, by November 26, 2017. Chamberlain did not file his federal petition by that date.  At the earliest, he filed this petition on August 8, 2018, the first time he placed it in the prison mail, but it was returned to him as undeliverable; his petition in this case was over nine and a half months too late under the statutory tolling provision.  This assumes that that the state habeas proceeding was properly filed, which it was not.

The Supreme Court has long recognized that a petition untimely filed in state court is not properly filed.  *Artuz v. Bennett,* 531 U.S. 4, 11 (2000).  If the state petition is untimely under state law, "'that [is] the end of the matter' for purposes of § 2244(d)(2)."  *Pace v. DiGuglielmo,* 544 U.S. 408, 414 (2005) (citation omitted). The state court specifically held that his habeas petition was untimely.  (Va. Cir. Ct. Final Order 3–4, ECF No. 19-16.)  This means it was not properly filed, the time between September 12, 2016, and October 26, 2017, was not tolled, and the federal statute of limitations expired on October 13, 2016, which renders the current petition untimely.  Whether this court considers the petition filed the first time he placed it in the mail on August 8, 2018, or on September 6, 2018, when he placed it in the

prison mail the second time, Chamberlain filed his petition nearly two years too late under the statute.

The Supreme Court has recognized that the statute of limitations for habeas petitions under AEDPA is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 636 (2010). A petitioner must show (1) that he has been pursuing his rights diligently and that (2) some extraordinary circumstances prevented his timely filing. *Id.* at 649. Chamberlain regularly wrote to his attorney[4] and paid $15,000 as a retainer fee,[5] which shows diligent pursuit of his rights. While "garden variety" negligence of counsel is imputed to the client, more serious errors can be considered

---

[4] Chamberlain attached copies of letters he wrote to counsel, culminating in his retention of counsel to file a petition for certiorari with the Supreme Court and state and federal habeas petitions. (Pet., Ex. 1, ECF No. 1-1.) In the last of those letters, dated June 17, 2015, he acknowledged receipt of a June 14 letter with the Supreme Court of Virginia's denial of appeal, and he indicated he wished to appeal to the U.S. Supreme Court; he asked many questions about the cost of further appeal, state habeas, and federal habeas, and whether they recommended that he pursue this course of action. (*Id.* at 5–6.) Counsel responded with a fee agreement dated July 9, 2015, requiring Chamberlain's signature, which Chamberlain signed on July 13, 2015, and forwarded to his mother for her signature and payment of the $15,000; the agreement referred to prior conversations with Chamberlain. (*Id.* at 9–10.) On September 21, 2015, counsel sent Chamberlain a copy of the petition for certiorari and said, "I have received your letters and ideas and research are thoughtful and helpful [sic]," clearly indicating that Chamberlain continued to send letters and communicate about his case. (*Id.* at 3.)

[5] In his brief, the respondent argues that payment of fees to counsel was not raised in the state habeas proceeding and therefore should not be considered by this court, citing *Cullen v. Pinholster*, 563 U.S. 170 (2011). (Br. Supp. Mot. Dismiss 11, 19, ECF. No. 19.) I consider this evidence solely on the issues of equitable tolling and "cause and prejudice." Paying a substantial sum to reputable counsel to prepare and file pleadings is itself diligence in pursuing rights, as laypeople generally expect well-paid lawyers to know what to do and when to do it.

"extraordinary circumstances." *Id.* at 653.  In *Holland*, as here, the petitioner's attorney did not file a petition by the deadline and apparently did not do the research to determine the appropriate deadline.  In that case, the attorney had filed a state habeas petition, but failed to notify the client of the state supreme court's decision and failed to file a timely federal habeas petition.  *Id.* at 637.  In Chamberlain's case, the attorney filed a petition for certiorari in the United States Supreme Court but failed to notify Chamberlain when that petition was denied and failed to file a timely state habeas petition.  In both *Holland* and here, "the failures seriously prejudiced a client who thereby lost what was likely his single opportunity" for review of his claims.  *Id.* at 653.  For Chamberlain, his claims asserted ineffective assistance of counsel and could only be raised for the first time in the state habeas proceeding. *Blevins v. Commonwealth*, 590 S.E.2d 365, 368 (Va. 2004).  Failure to file the claim timely resulted in default of his only opportunity to present the merits of those claims.

Although Chamberlain ultimately filed his own untimely petition, he alleges that he did so because counsel had not, and he did not want to file his petition late; so, having heard nothing from counsel, he filed his petition a month before he thought it was due, based on prior conversations with counsel.  He sent a copy of the petition to counsel on September 12, 2016, and terminated their representation.  By letter dated October 25, 2016, counsel acknowledged receiving Chamberlain's

petition and told him they were glad he had been able to use some of their work and that "we had worked voluminous hours on the habeas petition and were preparing the filing of such Petition." (Pet. Ex. 1, ECF No. 1-1.) Of course, if they were preparing the petition on September 12, three months after the deadline to file, this suggests why Chamberlain had inaccurate knowledge of when the petition was due. Whether Chamberlain is deemed to have been without counsel or to have had ineffective counsel, the result was the same: his claims for ineffective assistance of counsel were not raised in a timely fashion in the first and only state forum that had jurisdiction to adjudicate those claims. The Supreme Court has held that ineffective assistance of counsel — or absence of counsel — in state habeas proceedings can constitute cause to excuse procedural default of ineffective assistance of counsel claims that could only be raised for the first time in state habeas proceedings, like Chamberlain's claims in this case. *Martinez v. Ryan,* 566 U.S. 1, 9 (2012). By analogy, if the absence of effective counsel is grounds for relief from default under these circumstances, this court will consider the same as grounds for equitable tolling.[6]

---

[6] An argument can be made that equitable tolling of the federal statute for habeas claims based on ineffective assistance of counsel or absence of counsel should only extend to November 26, 2017, when his 2254 petition would have been due if the state proceedings had tolled the statute of limitations. However, misinformation from counsel permeated the entire sequence of events. Implicit in counsel's failure to realize that the state petition was already overdue in September 2016 is counsel's failure to realize that a petition for certiorari to the U.S. Supreme Court did not delay the one-year state statute of limitations

To exhaust his claims, a petitioner must present his federal constitutional claims to the highest state court before he is entitled to seek federal habeas relief. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Failure to do so "deprive[s] the state courts of an opportunity to address those claims in the first instance." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  When a petitioner has no more state remedies available, his claim has been exhausted.  When the state court rules that petitioner has procedurally defaulted his claims, those claims are simultaneously exhausted and defaulted.  *Id.*

Although I will equitably toll the statute of limitations for Chamberlain's ineffective assistance of counsel claims, he faces a stricter standard of review because the state court "clearly and expressly base[d] its dismissal" of his state habeas claims on procedural default under state rules, and those procedural rules provide "an independent and adequate ground for the dismissal." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

When a petitioner seeks federal relief for a defaulted claim of ineffective assistance of counsel at his trial, the Supreme Court held in *Martinez* that this can

_____

from starting, as Chamberlain had thought and argued to the Supreme Court of Virginia when trying to save his state habeas.  (Br. Supp. Mot. Dismiss Ex. 19, Va. Sup. Ct. Pet. for Appeal 8, ECF No. 19-19.)   Further, even though counsel had been retained for both state and federal habeas petitions, counsel failed to advise Chamberlain that the federal statute of limitations was rapidly approaching.  Thus, the policy concerns underlying *Martinez* compel this court to exercise its equitable discretion to toll the statute of limitations through the date on which Chamberlain filed his 2254 petition in this case.

warrant relief from default only if certain conditions are met.  566 U.S. at 13–15.

The Court outlined those conditions again in *Trevino v. Thaler*, 569 U.S. 413 (2013).

They are (1) that the claim of ineffective assistance of trial counsel is a '"substantial'

claim"; (2) the '"cause"' is the lack of counsel or ineffectiveness of counsel under

the standards of *Strickland v. Washington*, 466 U.S. 668 (1984); (3) that the state

post-conviction proceeding was the first time ineffective assistance of counsel was

raised; and (4) that the state post-conviction proceeding was the first one in which

petitioner was actually or effectively allowed by state law to raise the claim.

*Trevino*, 569 U.S. at 423 (quoting *Martinez*, 566 U.S. at 13–15).

As discussed previously, in Virginia, claims for ineffective assistance of

counsel can only be raised for the first time in state habeas proceedings.  *Blevins*,

590 S.E.2d at 368.  Chamberlain, in fact, tried to raise his ineffective assistance

claims in the state proceeding.  Therefore, the third and fourth prongs of the *Martinez*

standards have been met.

Prong number two has also been met.  From the record, Chamberlain had no

attorney when he filed his state habeas petition or his 2254 petition.  He had in fact

paid to retain an attorney, and that attorney had not yet filed a petition.  Clearly, the

attorney had already missed the deadline by the time Chamberlain filed his state

petition, not realizing that the deadline had passed.  The letter from counsel to

Chamberlain on October 25, 2016, indicated that the office had been working on the

habeas petition, stopping after receiving Chamberlain's correspondence of September 12, 2016.  As previously indicated, the statute of limitations for filing in state court expired on June 3, 2016, more than three months before counsel stopped working on the petition.  The obvious inference is that counsel either did not know or did not correctly calculate the state statute of limitations, a procedural matter. This satisfies both prongs of the *Strickland* test for ineffective assistance of counsel, which requires proof first that counsel's performance was deficient and second that the deficiency prejudiced the defendant.  466 U.S. at 687.  Failure to file a notice of appeal or other pleading in a timely fashion, when counsel has been directed to do so, has been recognized as deficient performance.  *Roe v. Flores-Ortega*, 528 U.S. 470, 485 (2000).  When counsel's deficient performance deprives a litigant of an entire judicial proceeding to which he would otherwise be entitled, prejudice is presumed.  *Id.* at 483.  Thus, whether Chamberlain was unrepresented or had ineffective assistance of counsel, the second prong of the *Martinez* test has been met.

The last hurdle for Chamberlain in order to overcome the procedural default is that his ineffective assistance of trial counsel claim must be a substantial one, meaning simply that it must have some merit.  *Martinez*, 566 U.S. at 14.  If any of his claims meet this test, then the court can consider the merits of that claim, including taking evidence, if necessary.  However, finding that a constitutional claim has merit is not the same as deciding that he has won his 2254 claim; it merely means

that he has avoided the procedural default bar for that claim.  *Id.* at 15.  Whether he has presented a substantial claim for constitutionally ineffective assistance of trial counsel must be evaluated on a claim-by-claim basis.

Examination of ineffective assistance of counsel claims starts with the deferential requirements set forth in *Strickland*: A petitioner must show that (1) counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 687, 694.  Deficient performance requires a showing that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing professional norms."  *Id.* at 688.  "Reasonable probability" of a different outcome is "a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.

Failure to properly instruct the jury on each element of the charged offense violates the Sixth Amendment's jury trial guarantee.  *Neder v. United States*, 527 U.S. 1, 12 (1999).  "[A] correct statement of the law is one of the essentials of a fair trial."  *Goodson v. Commonwealth*, 467 S.E.2d 848, 854 (Va. Ct. App. 1996) (internal quotation marks and citations omitted).  Failure to object to an instruction that omits an essential element of the crime falls below an objective standard of reasonableness. *Reagan v. Norris*, 365 F.3d 616, 621 (8th Cir. 2004).  The objective

deficiency is especially apparent when the erroneous instruction "materially lightens the government's burden of proof." *Lobbins v. United States*, 900 F.3d 799, 802 (6th Cir. 2018). "There is no conceivable strategic reason for a defense lawyer to forgo a challenge to a prejudicial jury instruction; a mistake of law is deficient performance." *Cates v. United States*, 882 F.3d 731, 736 (7th Cir. 2018). Therefore, if trial counsel agreed to or failed to object to an erroneous jury instruction in Chamberlain's case, that is deficient performance.

In Virginia, "attempt to commit a crime is composed of two elements: (1) [t]he intent to commit it; and (2) a direct, ineffectual act done towards its commission." *Goodson,* 467 S.E.2d at 855. The intent the state must prove "is the specific intent in the person's mind to commit the *particular* crime for which the attempt is charged." *Jordan v. Commonwealth*, 649 S.E.2d 709, 711 (Va. Ct. App. 2007) (emphasis added) (internal quotation marks and citation omitted). In an attempted first-degree murder case, the Commonwealth is required to prove the specific intent to kill by one of the enumerated methods "or by a 'willful, premeditated, and deliberate' act." *Goodson*, 467 S.E.2d at 856 (citing Va. Code Ann. § 18.2-32).[7] The capital murder statute, as relevant to Chamberlain's case, requires (1) willful,

---

[7] Virginia Code § 18.2-32 defines first degree murder as murder committed "by poison, lying in wait, imprisonment, starving, or by any willful, deliberate, and premeditated killing." Every other murder (other than capital murder or felony murder) is second degree murder.

deliberate, and premeditated killing (2) of a law enforcement officer (3) for the purpose of interfering with his official duties.  Va. Code Ann. § 18.2-31(6).  This means that attempted capital murder requires an attempt, with the specific intent to kill a law enforcement officer, by a willful, premeditated, and deliberate act, for the purpose of interfering with the officer's official duties.  *Jordan*, 649 S.E.2d at 712. Attempted capital murder requires a specific intent to perform the act, with willful, deliberate, premeditated death as the intended result.  *Coles v. Commonwealth*, 621 S.E.2d 109, 111 (Va. 2005).

The jury instructions in this case did not include any mention of willful, deliberate, or premeditated killing.  (Trial Tr. 281–89).  The trial court defined attempted capital murder in Instruction No. Eight:

> The Defendant is charged with the crime of attempted capital murder.  The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:

> 1. That the Defendant intended to kill Officer Wiscarson, a law enforcement officer, for the purpose of interfering with the performance of his official duties, and

> 2. That the Defendant did a direct act towards the commission of the capital murder which amounted to beginning of the actual commission of the capital murder.

> If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the above elements of the crime as charged, then you shall find the defendant guilty. . . .

(*Id*. at 284–85.)  The court also instructed that "the intent required to be proved in an attempted crime is the specific intent in the person's mind to commit the particular crime for which the attempt is charged."  (*Id*. at 285.)

In *Jordan*, the state court approved the following instruction as sufficient:

> The Court instructs the jury that [defendant] is charged with the crime of attempted capital murder.  The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime: one, that [defendant] attempted to kill Officer Lance Guckenberger, and two, that the attempted killing was willful, deliberate and premeditated . . .  and, four, that the attempted killing was of a law enforcement officer and for the purpose of interfering with the performance of his official duties.

649 S.E.2d at 711.  On appeal, Jordan objected because the instruction did not list "specific intent" in the above instruction.  The court overruled his objection, because the trial court in *Jordan* had given the instruction that "the intent required to be proved in an attempted crime is the specific intent in the person's mind to commit the particular crime for which the attempt is charged" and also that "willful, deliberate and premeditated means a specific intent to kill, adopted at some time before the attempted killing, but which need not exist for any particular length of time."  *Id*.  The *Jordan* court concluded that the instructions, taken together, fairly instructed on all the elements, including specific intent.  One can readily see that the instruction in Chamberlain's case, contrary to *Jordan*, did not fairly cover all the

elements.  The instruction did not list "willful, deliberate, and premeditated" as an element, nor did the court give any instruction defining willful, deliberate, and premeditated.  The words "willful, deliberate, and premeditated" did not appear anywhere in the instructions.

Under the instructions given by the trial court, the prosecution only had to show that Chamberlain attempted to kill the officer, with the intent to kill.  That is the definition for attempted second degree murder, except for the requirement that the intended victim be a law enforcement officer engaged in performing his duties.  Malice is an element of all murder in Virginia, whether capital, first-degree, or second-degree.  *Essex v. Commonwealth*, 322 S.E.2d 216, 219 (Va. 1984).  "The authorities are replete with definitions of malice, but a common theme running through them is a requirement that a wrongful act be done willfully or purposefully." *Id*. at 220.  Malice is defined in Virginia's Model Jury Instructions as:

> that state of mind which results in the intentional doing of a wrongful act to another without legal excuse or justification, at a time when the mind of the actor is under the control of reason.  Malice may result from any unlawful or unjustifiable motive, including anger, hatred or revenge. . . .  Malice may be inferred from any deliberate, willful, and cruel act against another, however sudden.

*Huguely v. Commonwealth*, 754 S.E.2d 557, 574–75 (Va. Ct. App. 2014).  Malice has also been described as "*action flowing from a wicked or corrupt motive, done with an evil mind and purpose and wrongful intention*."  *Id.* at 575.  In first-degree

-22-

murder cases, "malice is subsumed in proof of willfulness, deliberateness, and premeditation in the commission of a criminal offense." *Goodson*, 467 S.E.2d at 856 (citation omitted). That "willfulness, deliberateness, and premeditation" elevates second-degree murder to first-degree murder; indeed, that is the only distinction between second-degree and first-degree murder.[8]

There is also a temporal element to premeditation that is more than intent. With premeditation, the intent must be adopted at some time before the killing, however short that time might be. *Jordan,* 649 S.E.2d at 711. Determining whether a defendant's actions were willful, deliberate, and premeditated, or whether they resulted from malice falls to the jury to determine. *Painter v. Commonwealth*, 171 S.E.2d 166, 170 (Va. 1969). Because the jury was never instructed on the "willful, deliberate, and premeditated" element, the jury never made that factual determination. Accordingly, the jury instructions failed to instruct Chamberlain's jury on this essential element of the crime, and trial counsel's performance fell below an objectively reasonable standard.

Turning to the second prong of the *Strickland* test, the court considers whether counsel's failure to object to the erroneous instruction undermines confidence in the outcome of the trial. Although the evidence may have been sufficient to support a

---

[8]   Capital murder is first-degree murder with special circumstances, so the discussion of "willful, deliberate, and premeditated" is equally applicable.

finding that Chamberlain's actions were willful, deliberate, and premeditated, the jury was never instructed on "willful, deliberate, and premeditated" as an element, and how that is a higher mens rea than malice.  But the jury was instructed on the definition of malice.  (Instruction No. 14, Trial Tr. 288.)  From the evidence, the jury could also reasonably have concluded that Chamberlain's conduct, while malicious, lacked premeditation.  The jury could have found that Chamberlain's original intent was to escape apprehension and that he impulsively determined to shoot the weapon when the officer drew his gun.  Only by speculating, and taking that issue away from the jury, can one conclude as a matter of law that the shooting was willful, deliberate, and premeditated.  Nor do references to premeditation in the closing arguments of counsel remove the taint of a jury not properly instructed on an essential factual element of the crime.  As the Supreme Court has long noted, "arguments of counsel cannot substitute for instructions by the court."  *Taylor v. Kentucky*, 436 U.S. 478, 488–89 (1978).  Finally, the penalties applicable to attempted capital murder (25 years to life in prison) are much greater than the penalties applicable to attempted second-degree murder (two to ten years).  Va. Code Ann. §§ 18.2-25, 18.2-26, and 18.2-10.

For all these reasons, I find that counsel's error undermines confidence in the outcome of the trial.  Therefore, Chamberlain has asserted a substantial constitutional claim on this issue, getting him past the issue of procedural default.

However, this finding does not determine whether he prevails on this habeas claim on the merits.   That will be addressed separately, after considering whether Chamberlain's remaining eight claims are substantial constitutional claims that may overcome procedural default.

Instruction number 6 advised the jury, "You may infer that every person intends the natural and probable consequences of his acts."   (Trial Tr. 284.) Chamberlain asserts that this instruction violates the Supreme Court's holding in *Sandstrom v. Montana*, 442 U.S. 510 (1979), and that his trial counsel was ineffective for not objecting.   The Court in *Sandstrom* held unconstitutional an instruction stating that "the law *presumes* that a person intends the ordinary consequences of his voluntary acts." *Id.* at 513–14 (emphasis added).   In *Sandstrom*, the Court explained at great length the difference between a presumption and a permissive inference.   A presumption removes the disputed issue from the jury's consideration or at least places a burden of persuasion on the defendant to overcome the presumption.   An inference, however, is permissive, allowing but not requiring a jury to draw a conclusion.   The Court recognized that permissive inferences — and even presumptions that only shift the burden of production of evidence — do not share the same constitutional infirmity. *Id.* at 519.   The Supreme Court of Virginia relied on that distinction and upheld the same instruction at issue in this case in

*Schmitt v. Commonwealth*, 547 S.E.2d 186, (Va. 2001) *cert. denied,* 534 U.S. 1094, *reh'g denied,* 535 U.S. 922 (2002).

Because the instruction in this case is a permissive inference, counsel's failure to object to the instruction is not deficient performance.   Further, there is no prejudice from the granting of an instruction that has been consistently approved by the courts.   Accordingly, this claim does not constitute a substantial claim for constitutionally ineffective assistance of counsel.   The transcript documents that trial counsel objected to the alleged misstatement during the Government's closing argument:

> Your Honor, I'm going to object.  Mr. Jensen, I apologize to the court, but Mr. Jensen has said this two times that Officer Wiscarson has testified that Mr. Chamberlain fired first.  That's not the testimony that the jury has heard today.  The jury [sic], Officer Wiscarson says he's not sure who fired first, and he's testified to that several times today.

(Trial Tr. 291–92.)   The court instructed the jury to rely upon the testimony they heard, a proper curative instruction.   (*Id.* at 290.)   Failure to request a mistrial is a tactical decision left to the sound discretion of counsel.   *United States v. Chapman,* 593 F.3d 365, 368–69 (4th Cir. 2010).   Courts applying the *Strickland* standard are highly deferential to strategic decisions of counsel, and counsel's failure to request a mistrial does not constitute deficient performance under the facts revealed in the transcript.   Therefore, this claim is not a substantial claim for constitutionally ineffective assistance of counsel.

In some circumstances, courts have found that failure to request instruction on a lesser-included offense is objectively unreasonable, constituting deficient performance. *Breakiron v. Horn,* 642 F.3d 126, 138 (3rd Cir. 2011); *Richards v. Quarterman*, 566 F.3d 553, 569–70 (5th Cir. 2009). Others have held that whether to request a jury instruction on a lesser-included offense is a tactical decision. *Lopez v. Thurmer*, 594 F.3d 584, 588 (7th Cir. 2010); *Look v. Amaral*, 725 F.2d 4, 9 (1st Cir. 1984) ("Defense counsel may well have felt that, on the evidence, the jury would be more likely to convict on manslaughter than to acquit, but if given a choice only between a murder conviction and acquittal that an acquittal was more likely.") The Fourth Circuit Court of Appeals relied on the *Look* case in support of a similar tactical decision, when defense counsel in a drug distribution case specifically requested that the court *not* give an instruction on simple possession. *United States v. Chester*, Nos. 95-5446, 95-5510, 1997 WL 547976, at *2 (4th Cir. Sept. 8, 1997) (unpublished).

The United States Supreme Court has not addressed the specific issue of counsel's failure to request an instruction on lesser-included offenses. The Court has recognized, however, that a defendant is entitled to a lesser-included offense instruction where the evidence warrants it. *Beck v. Alabama*, 447 U.S. 625, 635–36 (1980); *Keeble v. United States*, 412 U.S. 205, 208 (1973). For the reasons stated in the discussion of Chamberlain's first claim, that trial counsel failed to object to an

improper instruction on attempted capital murder, the evidence in the case could have supported a conviction of either attempted capital murder or attempted second degree murder. Whether counsel's performance was deficient and to Chamberlain's prejudice is therefore sufficiently compelling to constitute a substantial claim for constitutionally ineffective assistance of counsel. As with Chamberlain's first claim, the court will address this claim on the merits after considering whether the remaining five claims raise "substantial constitutional claims" of ineffective assistance of counsel, thereby overcoming procedural default.

The Fourth Circuit has rejected due process claims based on cumulative ineffective assistance of counsel claims. *Mueller v. Angelone*, 181 F.3d 557, 586 n.22 (4th Cir. 1999); *Fisher v. Angelone*, 163 F.3d 835, 852 (4th Cir. 1998). Accordingly, this claim is not a substantial constitutional claim.

As previously noted, ineffective assistance of counsel can only be raised in post-conviction proceedings in Virginia, not on direct appeal. *Blevins,* 590 S.E.2d at 368. Because of this, appellate counsel's performance cannot be considered deficient for failing to raise issues that the court will not and cannot consider. *See Walker v. Mitchell*, 299 S.E.2d 698, 699–700 (Va. 1983), *superseded by statute on other grounds*, Va. Code § 8.01-654(A)(2), *as recognized in Haas v. Lee*, 560 S.E.2d 256, 257 (Va. 2002). Further, decisions regarding which issues to pursue in an appeal belong to counsel. Even if counsel decides not to pursue a non-frivolous

argument, in favor of one that he thinks will be more successful, *Strickland* mandates deference to strategies of counsel. *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983). Therefore, this claim is not a substantial constitutional claim.

Chamberlain's arguments regarding his speedy trial rights are based on the time limits of Virginia Code § 19.2-243. Violation of the statute does not establish a violation of the Sixth Amendment right to a speedy trial, nor has Chamberlain argued the factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Because his claim arises from state law, it is not cognizable on federal review. A federal court may grant a petitioner habeas relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Therefore, this claim is not a substantial constitutional claim.

As discussed in addressing claim (f) previously, decisions regarding which issues to pursue in an appeal are committed to the sound discretion of counsel. The issue appellate counsel chose to raise is an issue that has been identified in this opinion as a substantial constitutional question, and *Strickland* deference precludes the court from further questioning the strategies of appellate counsel. Therefore, this claim is not a substantial constitutional claim.

Under 28 U.S.C. § 2254(i), ineffective assistance of counsel during state and federal collateral post-conviction proceedings is not grounds for relief in federal habeas review.  Nothing in *Holland* changed this; in *Holland*, the Court allowed ineffective assistance of state habeas counsel to serve as justification for equitably tolling the federal time requirements for filing in a limited class of cases.  560 U.S. at 650.

In considering Chamberlain's nine claims for ineffective assistance of counsel, as discussed above, the court finds only two that are substantial claims of constitutionally ineffective assistance of counsel: (1) trial counsel's failure to object to the jury instruction which omitted willful, deliberate, and premeditated from the elements of attempted capital murder and (2) trial counsel's withdrawal of an instruction on lesser-included offenses.  On these two claims, the court finds that Chamberlain has shown sufficient cause and prejudice under *Martinez* to overcome his procedural default of these claims, allowing the court to consider these claims on the merits, which will be addressed in the next sections of this opinion.

A deferential standard of review applies to state court decisions that have adjudicated a petitioner's claims on the merits.  In such a case, habeas relief shall not be granted unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C.  §  2254(d)(1)–(2).   Even though the court held Chamberlain's claims to be procedurally barred, the state court held alternatively that trial counsel's performance was not deficient, and that Chamberlain was not prejudiced by any alleged deficiency.  That alternative holding is still entitled to the very deferential standard of review set forth in this paragraph.  *Stephens v. Branker*, 570 F.3d 198, 208 (4th Cir. 2009).  To prevail on the merits, Chamberlain's claim must survive this doubly deferential standard.  Then to obtain relief, he must demonstrate that the error had a substantial and injurious effect on the verdict.  *Calderon v. Coleman*, 525 U.S. 141, 147 (1998).

In addressing counsel's failure to object to the jury instruction for attempted capital murder, the state court made the following findings of mixed fact and law: (1) that the Virginia Court of Appeals had found "that the jury instructions taken as a whole adequately covered the elements of attempted capital murder"  (Va. Cir. Ct. Final Order 9, ECF. No. 19-16); (2) that trial counsel had sound tactical reasons for declining to object to the instruction (*id.*); (3) that overwhelming evidence was submitted to support a finding of willful, deliberate, premeditation, so any error was harmless (*id.* at 10); (4) that "*all* the evidence pointed to his actions being premeditated" (*id.* at 11, emphasis added); and (5) that Chamberlain suffered no prejudice as a result of the instruction (*id*).

The threshold issue in a merits review of a state habeas claim is whether the state's decision "is contrary to, or involved an unreasonable application of, clearly established Federal law."  28 U.S.C. § 2254(d)(1).  In this case, the court finds that the state court's decision is contrary to '"clearly established Federal law, as determined by the Supreme Court.'"  *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003) (quoting 28. U.S.C. § 2254(d)(1)).  In order to qualify as clearly established law, the position urged by the habeas petitioner must have been pronounced by the Supreme Court in its holding, and the Court's holding must have been announced before the state court's final decision on the merits.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  The Supreme Court held in *United States v. Gaudin* that "[t]he Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged."  515 U.S. 506, 522–23 (1995).  The Court has consistently held that jury instructions which omit an element of the offense violate the defendant's Sixth Amendment right to trial by jury.  *See, e.g., Neder*, 527 U.S. at 12.  This case pre-dates Chamberlain's trial by more than a decade.  The state court's determination that instructions were adequate when completely omitting any mention of willful, deliberate, and premeditated, an essential element of the crime, is contrary to clearly established law.

Failure to object to an instruction that omits an essential element of the crime falls below an objective standard of reasonableness, especially when the erroneous instruction "materially lightens the government's burden of proof." *Lobbins v. United States*, 900 F.3d 799, 802 (6th Cir. 2018).   Under *Strickland*, attorney performance that falls below an objective standard of reasonableness is deficient performance.   *Strickland* pre-dates Chamberlain's trial by 25 years.

The state habeas court misconstrued the decision of the appellate court as holding that "the jury instructions as a whole adequately covered the elements of attempted capital murder." (Va. Cir. Ct. Final Order 9, ECF. No. 19-16.)   First, the court of appeals did not address the merits of Chamberlain's claim that the instruction was improper.   The appellate court found that the issue had been waived, because trial counsel agreed to the instruction, thereby inviting the error and waiving his right to seek an ends-of-justice exception to the contemporaneous objection rule under Rule 5A:18 of the Rules of the Supreme Court of Virginia.   (Va. Ct. App. Order 3–4, ECF No. 19-5.)   Even if the ends-of-justice exception applied, Virginia law requires that a flawed jury instruction be combined with the failure of the evidence to prove an essential element of the offense charged in order to overcome the procedural default, according to the appellate court.   Using a sufficiency of the evidence analysis (*id.* at 2), in the light most favorable to the Commonwealth, the appellate court found sufficient evidence to support the "finding that appellant acted

with the specific intent to kill, and appellant cannot 'affirmatively prove that an element of the offense did not occur.'" (*Id.* at 6 (citations omitted).)[9]

Second, the state habeas court erred in deferring to a discussion of "specific intent," which was not the basis for Chamberlain's challenge of the jury instruction. The basis for challenge was that the instructions did not address "willful, deliberate, and premeditated," which is a different issue from intent, as previously discussed in this opinion. On habeas review, Chamberlain claimed ineffective assistance of counsel for agreeing to the erroneous instruction. Because the instruction omitted the single element that distinguishes second degree murder from the higher levels of homicide, Chamberlain's right to have a jury decide his guilt on each element of the crime was violated.

The state habeas court's conclusion that counsel had sound tactical reasons for agreeing to the instruction is also contrary to law. As recognized by the Seventh Circuit, "There is no conceivable strategic reason for a defense lawyer to forgo a challenge to a prejudicial jury instruction; a mistake of law is deficient performance." *Cates v. United States*, 882 F.3d at 736. The "strategic reason" given by trial counsel, that he thought "intended to" would be better for his client than

---

[9] The standard for overcoming procedural default on direct appeal is extremely high in Virginia, but the state court expects that errors of counsel that affect a defendant's rights will be addressed in a later claim for ineffective assistance of counsel. *See Vay v. Commonwealth*, 795 S.E.2d 495, 506 (Va. Ct. App. 2017).

"premeditated," is not a strategic reason; attempted capital murder requires both specific intent and premeditation. It is not logical to suggest that his client would fare better if the government only had to prove one of those elements.

Finally, the assertion that the evidence was sufficient to find "willful, deliberate premeditation" does not resolve the constitutional error created by the failure to instruct the jury on all elements:  The evidence was equally sufficient to find malice, supporting a conviction for attempted second-degree murder, and between those two offenses, Chamberlain had a constitutional right to have the jury decide each element before convicting him.  Counsel's ineffective failure to ask the court to instruct the jury on each element does not nullify Chamberlain's Sixth Amendment right to jury trial, nor does counsel's ineffectiveness authorize the state court to decide between malice and premeditation as a matter of law.

To the extent that any of the state court's findings are considered determinations of fact instead of law, the same reasoning applies.  Because Chamberlain had the right to have the jury decide his guilt or innocence regarding each element, it is an unreasonable determination of facts for the court to make the determination as a matter of law without submitting the facts to the jury along with proper instructions of law.  The trial court's decision unreasonably undermined "the factfinder's responsibility at trial . . . to find the *ultimate* facts beyond a reasonable doubt." *Gaudin*, 515 U.S. at 515 (internal quotation marks and citations omitted).

Although recognizing that omission of an element from jury instructions is constitutional error, the Court has held that this error is subject to harmless error analysis. *Neder*, 527 U.S. at 15. That requires the reviewing court on direct appeal to determine whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id*. (internal quotation marks and citation omitted). On habeas review, the standard is stricter: Whether the omission "by itself so infected the entire trial that the resulting conviction violates due process, . . . not merely whether the instruction is undesirable, erroneous or even universally condemned." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (internal quotation marks and citations omitted); *Fulton v. Warden, Md. Penitentiary*, 744 F.2d 1026, 1032 (4th Cir. 1984).

On the facts of this case, I cannot say that the error was harmless; rather, by failing to object to the absence of an instruction on a critical element of the crime and to offer such instruction, counsel's ineffectiveness violated Chamberlain's due process rights. The right to trial by jury is "fundamental to the American scheme of justice" and applies to the states. *Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993) (citation omitted). Intrinsic to the right to trial by jury is the right to have the jury determine a defendant's guilt of each element of the crime, beyond a reasonable doubt. *Id.*; *Gaudin*, 515 U.S. at 509. The jury's responsibility is to determine the facts, to "apply the law to those facts and to draw the ultimate conclusion of guilt or

innocence." *Id.* at 514.   This court must ask what effect the error had upon the guilty verdict in this case, not what effect it might reasonably be expected to have. Importantly, in making this determination, this court cannot usurp the role of the factfinder.  *Id.* at 515.  In the words of Justice Scalia, the inquiry is:

> not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error.

*Sullivan*, 508 U.S. at 279.  The due process right is the right to have the jury determine each element, beyond a reasonable doubt, before conviction.  When that decision has been taken from the jury by failing to instruct on a critical element of mens rea, it is not enough to say that there was enough evidence for the jury to find him guilty of attempted capital murder; the critical element of intent, whether it was malice or premeditation, should have been made by the jury.   The evidence supported either verdict.  This is not like the situation where there could only be one result from the evidence.  In *Neder*, where the trial court failed to instruct the jury that false statements on his taxes had to be "material" in order to convict him of filing false income tax returns, the evidence was that five million dollars were not reported.  527 U.S. at 16.  There is no question that five million dollars is material to determining proper income taxes, and his defense had been that the money was a loan, so would not be considered income.  *Id*.  In the present case, if the element that the jury instruction omitted were whether the intended victim was a law enforcement

officer, one could say that deciding that issue as a matter of law, rather than submitting it to the jury, would be harmless on the evidence in this case, but that is not the element that was taken from the jury by the erroneous instruction. For these reasons, counsel's agreement to an instruction that failed to include willful, deliberate premeditation, cannot be considered harmless.

As discussed above, Chamberlain had a right to have the jury instructed on lesser included offenses supported by the evidence. Whether his attorney's failure to offer such an instruction constitutes ineffective assistance of counsel requires deference to the state court's decision unless contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts.

A decision is contrary to federal law only if it reaches a legal conclusion that is directly opposite to a Supreme Court decision or if it reaches the opposite result from the Supreme Court on facts that are materially indistinguishable from the Supreme Court case's facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state's decision is an "unreasonable application" of federal law only if the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter,* 562 U.S. 86, 103 (2011). The question is not whether a federal court believes the state court's decision is incorrect, but whether the decision

was unreasonable, which is "a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007).  As previously indicated, there is no Supreme Court case addressing the specific issue presented here, whether counsel is ineffective for failing to offer a jury instruction on lesser included offenses.  Thus, the state habeas court's decision was not contrary to a Supreme Court case. The remaining question is whether the state's decision was an unreasonable application of federal law.

The state habeas court here found that counsel's performance was not deficient because of strategies of counsel.  (Va. Cir. Ct. Final Order 16, ECF No. 19-16.)  I cannot say that the habeas court's decision was an unreasonable application of existing law.  The Fourth Circuit in *Chester,* 1997 WL 547976, at *2, and the First Circuit in *Look*, 725 F.2d at 9, both concluded that failing to request a jury instruction — or even actively objecting to such an instruction — on lesser included offenses could be a reasonable strategy of counsel.  Even if this court completely disagrees with the conclusion that failing to offer the instruction is a reasonable trial strategy, the law requires this court to defer to the state habeas court's decision unless no fair-minded person could disagree.  When the circuit courts of appeal are divided and the Supreme Court's cases have given no clear answer to the exact question presented, let alone an answer favorable to the petitioner, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"  *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (citations omitted).   Because Chamberlain cannot show

that the habeas court's decision on deficient performance is contrary to, or an unreasonable application of, clearly existing federal law, the ineffective assistance claim for withdrawing the jury instruction on lesser included offenses cannot prevail on the merits.

A federal court must presume that the state court's factual findings are correct, and this presumption can be overcome only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Again, a federal court must find more than just an incorrect determination of facts, as "unreasonable determination of the facts" is "a substantially higher threshold." *Schriro,* 550 U.S. at 473. Whether a litigant has been prejudiced by deficient performance is a mixed question of fact and law, entitled to full deference by this court. Although Chamberlain cannot prevail on this claim because both prejudice and deficient performance must be shown, and deficient performance has already been determined adversely to him, I find it necessary to address the prejudice element of this claim, because of its inter-relatedness to the claim for improper instruction on attempted capital murder.

I find the state habeas court's decision of "no prejudice" to be an unreasonable application of federal law and an unreasonable determination of facts. As discussed above, the evidence in the case supported a conviction for either attempted capital murder or attempted second degree murder; under the Sixth Amendment, Chamberlain had the right to have his guilt on each element determined by the jury.

*See Gaudin*, 515 U.S. at 522–23. Because the minimum penalty for attempted capital murder is 25 years, and the *maximum* penalty for attempted second-degree murder is 10 years, one cannot say that Chamberlain was not prejudiced by the failure to allow the jury to decide whether he should be convicted of attempted capital murder or attempted second-degree murder.  If not for deference to the state habeas court's determination that counsel's decision to withdraw the instruction was a reasonable trial tactic, I would grant relief on this claim, because Chamberlain had a constitutional right for the jury to determine which crime he committed and there is a reasonable possibility that a properly instructed jury would have returned a lesser verdict.  However, the law compels me to dismiss this claim in deference to the state court's determination that counsel's performance was not deficient.

### III.

Because trial counsel's performance was below an objective standard of reasonableness in failing to object to the attempted capital murder instruction that omitted an essential element of the crime, Chamberlain was prejudiced by that failure, and the state habeas court's decision to the contrary is an unreasonable application of federal law and contrary to United States Supreme Court precedent. The court will therefore grant Chamberlain's petition for habeas corpus relief on Claim One.  Chamberlain shall be released from state custody after service of his sentences for malicious discharge of a weapon in an occupied dwelling and for

possession of a firearm by a convicted felon unless the Commonwealth of Virginia retries him for attempted capital murder and use of a firearm in attempted capital murder within 120 days.

Accordingly, it is **ORDERED** that the Petition and Amended Petition and the Motion to Dismiss, ECF No. 17, are GRANTED IN PART AND DENIED IN PART.  The petitioner's Motion for a Ruling, ECF No. 52, is DENIED as moot.  As to those claims denied, the court concludes that Chamberlain has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(1) and will deny a certificate of appealability.

A separate judgment will be entered.

ENTER:   September 30, 2021

/s/  JAMES P. JONES
Senior United States District Judge